IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| DIANA L. SISK ) | |
| ) | Case No. 3:22-cv-00958 |
| v. ) | Magistrate Judge Holmes |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |

## MEMORANDUM OPINION

Plaintiff Diana L. Sisk filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Social Security benefits ("SSI") under Title XVI of the Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 17), to which Defendant SSA has responded (Docket No. 21), and to which Plaintiff has filed a reply (Docket No. 22). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and order of the District Judge in accordance with 28 U.S.C. § 636(c). (Docket No. 13.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 17) is **GRANTED**. For the reasons stated herein, the Court **REVERSES** the decision of the SSA and **REMANDS** this case for further administrative proceedings.

### I.     INTRODUCTION

Plaintiff has filed two applications for DIB and SSI, both of which have resulted in unfavorable decisions from the presiding Administrative Law Judge ("ALJ"). Plaintiff proactively filed her first application on December 14, 2013, for which ALJ Frank L. Gregori issued an

unfavorable decision on January 13, 2016. ((Transcript of the Administrative Record (Docket No. 23) at 66–75.)[1]

Plaintiff then proactively filed another application on January 10, 2017 in which she asserted that, as of the alleged onset date through the date her insured status expired, or February 1, 2016 to December 31, 2016, she was disabled and unable to work due to depression, anxiety, panic attacks, and post-traumatic stress disorder ("PTSD"). (AR 245.) Her claims were denied initially on February 28, 2017 and upon reconsideration on May 22, 2017. (AR 140–43, 148–51.) On April 11, 2018, Plaintiff appeared with counsel and testified at a hearing conducted by ALJ Angele Pietrangelo. (AR 33–62.) On August 10, 2018, ALJ Pietrangelo denied the claim. (AR 15–27.) After being denied review by the Appeals Counsel, Plaintiff sought judicial review from this Court, which ultimately resulted in an order vacating the ALJ's unfavorable decision and remanding the matter back to the SSA "for a new hearing before an ALJ other than the ALJ who presided over the claimants' original hearing." (AR 732–33.)

On February 1, 2022, Plaintiff appeared with counsel and testified at a telephone hearing conducted by a different ALJ, Robert Martin. (AR 705–27.) On March 16, 2022, ALJ Martin denied the claim. (AR 678–98.) On September 27, 2022, the Appeals Council denied Plaintiff's request for a review of ALJ Martin's decision, thereby making it the final decision of the SSA. (AR 672–76.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

## II. THE ALJ'S FINDINGS

In his March 16, 2022 unfavorable decision, ALJ Martin included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since February 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depression; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); stage I diastolic dysfunction; and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she can no more than frequently climb ramps and stairs; frequently climb ladders, ropes, and scaffolds; frequently stoop, crouch, kneel, crawl, and balance. Mentally, the claimant can understand simple, detailed, and multi-step tasks of no more than 1 to 4 steps, but not complex tasks. She can sustain adequate concentration, persistence, and pace for periods of at least two hours at a time throughout an eight-hour workday with customary breaks. She can have no more than occasional interaction with the general public, supervisors, and coworkers. She can set goals and adapt to infrequent workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 25, 1960 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 684–97.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSIONS AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

4

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.     The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps: (1) she had not engaged in substantial gainful activity since her alleged onset date, and (2) her impairments of "depression; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); stage I diastolic dysfunction; and degenerative disc disease" were severe.[2] (AR 684–86.) However, the ALJ determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 686–87.) At step four, the ALJ determined that Plaintiff had the RFC to perform medium work with certain postural, manipulative, and mental limitations. (AR 688–96.) At step five, the ALJ determined that Plaintiff could not perform past relevant work but could perform work as a battery stacker, machine feeder, or frame hand. (AR 696–97.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from February 1, 2016 through December 31, 2016, the date last insured. (AR 697.)

**C.     Plaintiff's Assertions of Error**

Plaintiff sets forth two assertions of error:

1. "The ALJ's decision is predicated on an unsupported RFC assessment conjured out of whole cloth due to the ALJ's failure to adequately develop the record."

2. "The vocational expert's testimony is unreliable and inconsistent with the DOT, and therefore inadequate to constitute substantial evidentiary support for the ALJ's finding at Step 5."

---

[2] The ALJ found that Plaintiff's diabetes mellitus, migraines, congenital malformation of the right ear, and osteopenia did not cause more than minimal limitation to Plaintiff's ability to perform basic work activities and, accordingly, were non-severe impairments. (AR 685–86.)

(Docket No. 17-1 at 8–17.) Accordingly, Plaintiff requests that this case be remanded for further consideration under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

1. **The RFC Formulation.**

For her first assertion of error, Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ did not properly formulate or explain the RFC, particularly with respect to her physical limitations. She argues that the ALJ failed to "explain how specific evidence supports his terse conclusion" and to "provide any logical and evidentiary basis for the limitations outlined in his RFC assessment," all of which "frustrates meaningful review of the propriety of the RFC assessment." (Docket No. 17-1 at 9, 12–13.)[3]

---

[3] The relevant time period for Plaintiff's DIB claim ranges from February 1, 2016, the alleged onset date, to December 31, 2016, the date last insured ("DLI"), which represents the final date on which a claimant retains insured status for purposes of a DIB claim. The latter date is significant because a claimant seeking disability benefits must present evidence that she became disabled prior to the DLI. *See Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015)

7

In short, Plaintiff challenges the sufficiency of the ALJ's assessment of her RFC, which is "the most a claimant can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

In his decision, the ALJ determined that Plaintiff had the RFC to perform "medium work" with certain limitations. (AR 688.) Medium work involves the occasional lifting of 50 pounds at a time, and frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567, 416.967. Medium work can require standing and walking as much as six hours during any given eight-hour workday. *Id.* It may also involve frequent stooping, grasping, holding, and turning objects. *Id.* The ALJ included some limitations in the RFC for Plaintiff's diastolic dysfunction and degenerative disc disease, which he had previously found to be severe impairments. (AR 695.) Those limitations included that Plaintiff could no more than frequently climb ramps, stairs, ladder,

---

("Claimant bears the burden of establishing that a disability began before [her] disability insurance expired.").

For SSI applications, the inquiry focuses on whether the claimant was disabled on or after the application date, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993), which means that the relevant time period for Plaintiff's SSI claim is January 10, 2017, the SSI application date, to March 16, 2022, the date of the ALJ's unfavorable decision. (AR 15, 60.)

8

ropes, and scaffolds, and could no more than frequently stoop, crouch, kneel, crawl, and balance. (AR 688.)

In finding that Plaintiff could perform medium work, the ALJ noted that "none of the medical consultants completed a physical assessment setting forth any actual functional limitations." (AR 695.) Instead, the ALJ based his RFC formulation on "the lack of lower back treatment, the claimant's most recent job where she was standing and walking the entire time, consistently unremarkable physical examinations, and generally independent activities of daily living," which he stated, "all support that the claimant can perform medium exertional work with frequent postural activities." (AR 695–96.) The only medical opinions that the ALJ evaluated were those from State agency psychological consultants who found that Plaintiff had no more than moderate *mental* limitations. (AR 695.) The ALJ did not reference or evaluate any medical opinions regarding Plaintiff's *physical* limitations.[4]

An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The RFC opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v.*

---

[4] The ALJ stated that he considered the "medical opinions" and "prior administrative findings" in the record. (AR 695.) A "medical opinion" is a "statement from a medical source about what you can still do despite your impairment(s)," 20 C.F.R. § 404.1513(a)(2), and a prior administrative finding" is a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" regarding an impairment, *id.* at § 404.1513(a)(5).

However, as the ALJ states, there are no "medical opinions" or "prior administrative findings" in the record related to Plaintiff's *physical* limitations.

9

*Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). *See also Smiley v. Comm'r of Soc. Sec.*, 940 F.Supp.2d 592, 600–01 (N.D. Ohio 2013) Accordingly, because medical opinions are such an important piece of evidence to support a claimant's RFC, ALJs have been cautioned against relying on their own expertise in drawing RFC conclusions from raw medical data. *See id.* This sentiment is further supported by the SSA regulations, which state that an ALJ must "explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 416.920c(b)(2).

Here, however, as the ALJ himself admitted, there was no opinion evidence whatsoever on which the ALJ based the RFC formulation with respect to Plaintiff's physical limitations. This is problematic given that, despite the wide latitude afforded to the ALJ's determination, *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)), the ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings." *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted). Because the ALJ did just that in this case, the Court finds that his determination lacks the support of substantial evidence.

The Court recognizes there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. *See Deskin*, 605 F. Supp. 2d at 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"). This, however, is not such a case. The ALJ impermissibly relied on his own interpretation of the medical data of record and improperly substituted his interpretation in

10

place of the opinions of treating and state agency physicians. Although the ALJ also relied on Plaintiff's prior job history and "generally independent activities of daily living," these considerations do not make up for the ALJ's failure to consider opinion evidence on Plaintiff's physical limitations. Under these circumstances, the ALJ's RFC determination lacks adequate support to conclude that Plaintiff can perform medium work. Accordingly, remand is necessary.

However, the record in this case does not "adequately" establish Plaintiff's entitlement to benefits so as to obviate the need for further administrative proceedings. *Holtman*, 441 F. Supp. 3d at 609. A medical expert would presumably be able to interpret the medical findings available and produce an opinion regarding the functional physical restrictions, if any, to which Plaintiff is subject. The Court therefore directs that, upon remand, the ALJ is required to obtain the opinion of a medical expert with respect to Plaintiff's physical functional limitations.[5] While the decision to require a consultative examination is typically within the discretion of the Commissioner, *see* 20 C.F.R. § 416.920b(b)(2)(iii) ("We may ask you to undergo a consultative examination at our expense . . . "), the Court finds that such an examination is appropriate under the circumstances here. *See Shipman v. Comm'r of Soc. Sec.*, 271 F. Supp. 3d 899, 907-08 (E.D. Mich. 2017) (noting that an ALJ is "authorized . . . to order additional testing if the existing medical sources do not contain sufficient evidence to make a determination") (quoting *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)). The Court thus accepts Plaintiff's assertion of error and remands this matter for further consideration as directed.

---

[5] Plaintiff broadly states that the entire RFC assessment was "conjured out of whole cloth due to the ALJ's failure to adequately develop the record." (Docket No. 17-1 at 8.) However, in her brief, Plaintiff focuses on the ALJ's failure to properly evaluate her physical limitations. Accordingly, the Court will not explicitly direct the ALJ to obtain additional evidence concerning Plaintiff's *mental* functioning, though the ALJ may do so and should not feel constricted to focus only on Plaintiff's physical health.

11

On a separate though related note, with respect to Plaintiff's "generally independent activities of daily living," Plaintiff argues that the ALJ did not properly explain either to which daily living activities he was referring or how those daily living activities showed that Plaintiff could perform medium work. (Docket No. 17-1 at 11–12.) The ALJ described Plaintiff's hearing testimony regarding her ability to do her own housework in a slow manner and her reliance on her daughters to drive her to the store, among other daily activities, most of which related to Plaintiff's emotional state. (AR 689.) However, he provided no description of how or why these activities show that Plaintiff could perform medium work. Put another way, the ALJ provides no "logical bridge" between his reliance on the evidence of Plaintiff's daily activities and his conclusion that she could perform medium work. *See Beckrow v. Saul*, No. 19-12834, 2021 WL 900558, at *7 (E.D. Mich. Feb. 19, 2021) (citing *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017) ("In the instant case, it is unclear on what the ALJ based her ultimate RFC conclusion, and she draws no accurate and logical bridge to instruct the Court of her reasoning.")). Accordingly, the Court finds that the ALJ's reliance on Plaintiff's "generally independent activities of daily living" to support the *physical* limitations in the RFC was not supported by substantial evidence. The Courts directs the ALJ on remand to provide a "logical bridge" between his reliance on the evidence of Plaintiff's daily activities, if he so relies upon this evidence, and his formulation of the RFC.

On another separate though also related note, Plaintiff argues that the ALJ failed to consider her lack of insurance as a reason for her failure to receive treatment. In his decision, the ALJ noted Plaintiff's "lack of lower back treatment" as evidence to support a finding of medium work. (AR 695–96.) Social Security Ruling 16-3p sets forth guidelines for ALJs to use when evaluating symptoms in disability claims. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). In making this

12

evaluation, an ALJ must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case," which may include that an individual "may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *9.

When discussing Plaintiff's back, the ALJ noted that Plaintiff did not receive "consistent" treatment or "conservative" treatment (which he described as physical therapy or steroid injections) and that she had not had any emergency room visits due to any of her impairments. (AR 694.) He used the "evidence of record" to support his finding that Plaintiff was limited to medium work activity. (*Id.*) However, as Plaintiff notes, the ALJ failed to address the reasons why Plaintiff may not have pursued "consistent" or "conservative" treatment or why she may have avoided the hospital. A lack of insurance could certainly help explain those decisions. Accordingly, the Court finds that the ALJ did not comply with SSR 16-3p and directs the ALJ on remand to "consider and address reasons for not pursuing treatment that are pertinent" to Plaintiff's case as required under SSR 16-3p.

For all these reasons, the Court cannot find that the ALJ appropriately formulated the RFC. Accordingly, remand is required.

### 2. The ALJ's Consideration of Vocational Expert Testimony.

For her second assertion of error, Plaintiff contends that the ALJ's conclusion at step five – that Plaintiff could not perform past relevant work but could perform work as a battery stacker, machine feeder, or frame hand – is not supported by substantial evidence. Plaintiff argues that the ALJ relied on inconsistent and conflicting testimony from a vocational expert ("VE") to support his conclusion. In response, the SSA argues that the VE's testimony was sufficient, consistent, and accurate, and that the ALJ satisfied his obligation to resolve any conflicts. Although the Court

13

Case 3:22-cv-00958    Document 23    Filed 10/02/23    Page 13 of 17 PageID #: 1537

finds that this matter must be remanded based on the ALJ's formulation of Plaintiff's RFC, it does not find that Plaintiff has shown reversible error due to conflicting testimony from the VE.

At step five, ALJs are permitted to consider "reliable job information" from various publications as evidence of a claimant's ability to do other work "that exists in the national economy." SSR 00–4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1566(d) and 416.966(d)). These publications include the Dictionary of Occupational Titles ("DOT"), which provides "information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 416.969. ALJs are also authorized to consider the testimony of VEs as a source of occupational evidence. SSR 00–4p, 2000 WL 1898704, at *2.

When there is an apparent conflict between the DOT and the testimony of the VE, an ALJ must ask the VE if the evidence that he or she has provided "conflicts with [the] information provided in the DOT." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (quoting S.S.R. 00–4p, 2000 WL 1898704, at *4). ALJs must also "obtain a reasonable explanation for . . . apparent conflict[s]" if the VE's evidence "appears to conflict with the DOT." *Id.* (quoting SSR 00–4p, 2000 WL 1898704, at *4). The Sixth Circuit has held that the failure of an ALJ to question the VE about potential inconsistencies when such inconsistencies are in fact identified is a reversible error. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 575 (6th Cir. 2007).

During the hearing, the ALJ heard testimony from VE Daniel Turner. (AR 721–27.) The ALJ provided the VE with a hypothetical that incorporated the same limitations as those included in the ALJ's RFC finding. (AR 722–23.) The VE then testified that three jobs – battery stacker, machine feeder, and frame hand – existed "at the unskilled level this hypothetical person could do." (AR 723–24.) The ALJ asked a follow up question about the frame hand position:

> ALJ: What is a frame hand? Just curious.
> VE: It's gathering materials for framing of furniture products.
> ALJ: Okay. So, they are not actually assembling it, they are just gathering the products for it?
> VE: Correct.
> ALJ: Okay. And I think it's also safe to say this person would have no transferrable skills to light work.
> VE: Correct.

(AR 724.) Plaintiff contends that this testimony – that a frame hand "gather[s] materials for framing of furniture produced" but does not "actually assembl[e]" the furniture – conflicts with the job description associated with the DOT.

However, the administrative record shows that, consistent with SSR 00-4p, the ALJ asked the VE if his testimony was consistent with the DOT and the VE replied that it was. (AR 724–25.) The Sixth Circuit has held that "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Lindsley*, 560 F.3d at 606 (quoting *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)). Plaintiff's counsel did not question the VE regarding any alleged inconsistencies between the VE's testimony and the DOT and did not bring any alleged conflicts to the attention of either the ALJ or VE. (AR 725–27.) Because Plaintiff did not notify the ALJ of a conflict, the ALJ did not need to explain how any alleged conflict was resolved. *Id.*

Furthermore, the Court finds that there is no conflict between the DOT and the VE's testimony that a frame hand "gather[s] materials for framing of furniture produced" but does not "actually assembl[e]" the furniture. (AR 724.) The DOT defines "frame hand" as follows:

> Performs any combination of following tasks related to embroidering fabric: Carries frames to and from embroidery machines. Installs and removes frames from machine. Threads needles and changes threads. Replaces empty shuttles. Pins or ties overlapping fabric to frame.

15

DOT code 689.687-046, available at https://occupationalinfo.org/68/689687046.html. The Court agrees with Plaintiff that a frame hand "does not merely gather materials," (Docket No. 17-1 at 14), but it disagrees with Plaintiff's characterization of the VE's testimony. The VE did not claim that "gathering materials" was the "sole" responsibility of a frame hand. (Docket No. 22 at 4.) Rather, the VE provided a general summary of the DOT definition, which was not in conflict with that definition. *See Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010) (explaining that DOT definitions "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range") (quotations omitted).

Plaintiff also takes issue with how the VE derived the number of jobs that exist in the national economy for each of the three occupations that he discussed. She argues that the VE admitted that the source upon which he relied for job incidence number does not differentiate between part-time and full-time employment and that he did not employ a reliable method to calculate the number of jobs. (Docket No. 17-1 at 14–17.) She argues that the VE "must use some method for associating [Standard Occupational Classification System] SOC-based employment numbers to DOT-based job types." (*Id.* at 15 (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 450 (2d Cir. 2012).) However, Plaintiff offers no case law from the Sixth Circuit to support this contention. She also contends that the VE's job number estimates contrast with job numbers found in SkillTRAN's Job Browser Pro software. (*Id.* at 16–17.)[6]

However, Plaintiff failed to raise any of these issues at the hearing and has therefore waived them. *See, e.g.*, *Patterson v. Saul*, No. 3:18-0641, 2019 WL 4237854, *9 (M.D. Tenn. Aug. 2, 2019) ("Regardless of counsel's intentions, the Court concludes that his failure to object during

---

[6] This software attempts to provide job data information at a job-by-job level rather than "an aggregated group level." *See Purdy v. Berryhill*, 887 F.3d 7, 14–15 (1st Cir. 2018).

the administrative hearing constitutes waiver.") (citations omitted); *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078, *3 (N.D. Ohio Sept. 24, 2012) ("The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court.") (citing *Hammond v. Chater*, 116 F.3d 1480 (6th Cir. 1997) (Table); *West v. Comm'r of Soc. Sec.*, No. 2:11–CV–448, 2012 WL 3151209, at * 6 (S.D. Ohio Aug. 2, 2012); *Dantzer v. Comm'r of Soc. Sec.*, No. 3:09–CV–2198, 2011 WL 1113458, at *13 (N.D. Ohio Jan. 4, 2011); *Bechtold v. Massanari*, 152 F.Supp.2d 1340, 1347 (M.D. Fla. 2001)). Although Plaintiff's counsel did ask the VE about the "source" of the job numbers that the VE provided, counsel did not raise any objections at or after the hearing with respect to the VE's derivation of those numbers. (AR 726.)

For these reasons, the Court concludes that substantial evidence supports the ALJ's decision with respect to his consideration of the VE's testimony to support his conclusion at step five. The Court therefore rejects Plaintiff's second assertion of error.

V.    **CONCLUSION**

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (Docket No. 17) is **GRANTED**. The Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this case for further proceedings consistent with this ruling.

An appropriate Order will accompany this memorandum opinion.

_____
BARBARA D. HOLMES
United States Magistrate Judge